UNION PAC. R. CO. v. CAMPBELL et al.

(Circuit Court of Appeals, Eighth Circuit. October 13, 1916.)

No. 4529.

WATERS AND WATER COURSES &⟶118—EMBANKMENTS—SURFACE WATERS.

Defendant's predecessor constructed a solid embankment over marshy ground, which embankment was maintained for over eight years before defendant purchased the right of way at foreclosure sale. The embankment sometimes in cases of high water impounded water on adjoining land, though there were no well-defined water courses. Thereafter plaintiff purchased adjoining land, and neither plaintiff nor his lessee requested defendant to remove the embankment or provide outlets. *Held*, that defendant was not liable for injuries to the crops of plaintiff and his lessee by reason of the impounding of waters.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 128–130; Dec. Dig. &⟶118.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by James W. Campbell and J. N. Counter against the Union Pacific Railroad Company. There was a judgment for plaintiffs, and defendant brings error. Reversed, with directions to grant new trial.

This action was instituted on July 2, 1914, to recover damages alleged to have been sustained by the defendants in error, who will be referred to herein as the plaintiffs, against the plaintiff in error, who will be referred to as the defendant. The complaint contains two counts, each of them being based upon the alleged negligence of the defendant for "negligently, wrongfully, and tortiously maintaining a solid earth embankment forming an impervious dam, and thereby causing the overflow waters to be impounded on the land of the plaintiffs, and which could only escape therefrom by evaporation and seepage." The plaintiff Counter is the owner of the land alleged to have been damaged. It is triangular in shape, bounded on the north side by the embankment, which it is charged was constructed and maintained by the defendant; that the land is situated in the bottoms of the South Platte river, but at a sufficient level above the ordinary water line of the river to be free from overflow, except in times of high water, by flowage from the river for short periods down a natural drain or water course which transverses said land from southeast to northwest and continues in a general northerly direction from the north side thereof, rejoining the river. It is charged that the said defendant has negligently, wrongfully, and tortiously filled up and completely blocked the said water course on the north side of said land by the aforesaid embankment; that, but for this embankment, the water course would have carried off, without injury to the land or crops, all water coming thereon during the years complained of; that, from a point near the northeast corner of plaintiff's land, the line of defendant's railroad in its westerly course crosses the South Platte river by a bridge constructed, owned, and maintained by the defendant; that the said bridge is, and was at all times mentioned in the complaint, constructed and maintained negligently, wrongfully, and tortiously in this: That the space between the piles of the bridge was so narrow that, besides in themselves hindering the rapidity of the flow of the river, they hinder, limit, and check the passage of trees, boards, and planks; also that débris flowing down the said river is caught and held by and between the said piles, forming an artificial obstruction, and causing the waters of the stream to back up and reach a much higher level than they would otherwise reach in times of high water; that the defendant, during many years prior to the accrual of the causes of action alleged, negligently, wrongfully, and tortiously allowed débris washed down by said river to lodge and accumulate against said piles for a long period of time, causing the formation of artificial obstructions, and raising the level of said river, at the times alleged, to a much higher point than it would otherwise have reached; that by reason of these negligent, wrongful, and tortious acts of the defendant, the waters of the river were dammed back and caused to reach a much higher level than otherwise they would have reached, and caused the overflow upon the land set out in the two counts of this action; that the defendant wrongfully, negligently, and tortiously had constructed and maintained along the south side of the said embankment a deep excavation or cut, extending through the west bank of the river and leaving an open passageway through said bank, through which waters from the said river entered and overflowed the said land. The plaintiff Campbell was a tenant of this land for the years complained of, the crops raised on said land being the joint property of the plaintiffs during the years 1912 and 1914. The first count is for damages alleged to have been sustained by the plaintiffs by reason of the destruction of the crops on said land in July, 1912, on account of the negligent construction and maintenance of the embankment and excavation hereinbefore mentioned; the waters of the said river being backed up, overflowing the land and destroying the crops. The damages claimed for that year are $1,984. The second cause of action is for like damages sustained in 1914, causing, it is claimed, a damage of $6,900.

The answer denies that the defendant had constructed or negligently maintained a solid earth embankment, or an excavation, as charged in the complaint, and also denies the alleged damages. It charges that the plaintiffs

themselves were guilty of negligence and lack of ordinary care and caution in the protection of the crops planted, and that said negligence caused and directly contributed to the happening of the loss complained of. For a further defense it is claimed that the damages to the crops complained of were due to the scarcity of water in the natural streams and water courses, uses of appropriations by prior appropriators of water therein, limited natural precipitation, aridity of the soil and climate, nonproductivity of the soil, and destruction by insects. For a further defense it is alleged that the embankment described in the complaint was constructed prior to the year 1880 by the predecessor in title to the defendant, and ever since has been maintained in its original condition, and was at all times proper and necessary, and was used in connection with the operation of a railroad thereon; that by reason thereof the defendant acquired a vested right to maintain said embankment; that during the year 1898 the defendant acquired title to said embankment and right of way by purchase at a foreclosure sale held pursuant to a decree of court; that the plaintiff Counter became the owner of the land during the month of January, 1908, and his coplaintiff, Campbell, acquired a leasehold interest in it thereafter, both with full knowledge of the existence of said embankment, thereby assuming the risk of damages arising therefrom; that the damages, if any, were caused by an act of Providence and unavoidable accident, to wit, an unusual and extraordinary flood, which could not have been reasonably anticipated and guarded against; and that no request had ever been made of defendant to provide outlets.

There was a trial to a jury, who returned a verdict in favor of the plaintiffs upon the first cause of action, assessing the damages at the sum of $1,200. On the second count, for the injuries sustained in the year 1914, the jury found the issues in favor of the defendant. To review the verdict in favor of the plaintiffs on the first count a writ of error was granted.

Ralph G. Miller, of Denver, Colo. (Hughes & Dorsey and John Q. Dier, all of Denver, Colo., on the brief), for plaintiff in error.

W. C. Hood, Jr., of Brighton, Colo., for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). There are 40 assignments of error, most of them mere repetitions. At the close of all the evidence the defendant asked for a peremptory instruction on both counts, which was denied by the court, properly excepted to, and assigned as one of the errors committed by the court. This is the only assignment of error which we deem necessary to determine.

[1] The undisputed facts established by the evidence are that between 1872 and 1875 the Boulder Valley Railway Company built a trestle across the place where the embankment is now. The ground was low and marshy, and the trestle was built because less expensive than to have built a solid embankment at that time; that not later than 1890 the Boulder Valley Railway Company, who was still the owner of the railroad, filled this trestle, removed the bridge, and made a solid embankment, which embankment has been maintained ever since without any change, either by the Boulder Valley Railway Company or the defendant. In 1898 the defendant became the owner of the Boulder Valley Railway Company, by purchase at a foreclosure sale made by order of the court, and has ever since been the owner thereof; that the excavation mentioned in the complaint, along the south side of said embankment, was also made at the time the filling was done. The land of the plaintiff is low, and long before the plain-

tiff Counter purchased it and the defendant became the owner of the railway, this land had been overflowed when there were extraordinary heavy rains, such as those in 1912 and 1914. No request to provide outlets for the water was ever made by the plaintiffs. There was no bridge or trestle at that place since 1890, after the filling had been done.

There was no substantial evidence that there ever had been a water course to carry off the water from this tract; there were several depressions on the land, but no definite course that could be traced. Upon these facts we are of the opinion that there is no liability on the part of the defendant, and that the court should have directed a verdict in favor of the defendant, as requested.

The defendant did not construct this embankment; it had been there for at least eight years before it purchased the Boulder Valley Railway. It has done nothing since its purchase which could in any wise add to the injury of plaintiffs' land. When the plaintiff Counter purchased the land, and his coplaintiff, Campbell, rented it, they knew that the embankment was there, that it was a permanent structure, and would prevent any flood waters from running off their lands toward the north, and no doubt that fact was taken into consideration in determining its value. No request was ever made to the defendant to remove it, or provide outlets. Upon these facts the defendant is clearly not liable. Cases directly in point are Philadelphia, etc., R. R. Co. v. Smith, 64 Fed. 679, 12 C. C. A. 384, 27 L. R. A. 131; Central Trust Co. of New York v. Wabash, etc., Ry. Co. (C. C.) 57 Fed. 441; Plumer v. Harper, 3 N. H. 88, 14 Am. Dec. 333; Noyes v. Stillman, 24 Conn. 15; Conhocton Road v. R. R. Co., 51 N. Y. 573, 10 Am. Rep. 646; Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778; McDonough v. Gilman, 3 Allen (Mass.) 264, 80 Am. Dec. 72; Nichols v. City of Boston, 98 Mass. 39, 93 Am. Dec. 132; Castle v. Smith, 4 Cal. Unrep. Cas. 561, 36 Pac. 859; Pierson v. Glean, 14 N. J. Law, 36, 25 Am. Dec. 497; Beavers v. Trimmer, 25 N. J. Law, 97; Board of Directors v. Barton, 92 Ark. 406, 123 S. W. 382, 25 L. R. A. (N. S.) 645, 135 Am. St. Rep. 191. As stated by Judge Dallas in Philadelphia, etc., R. R. Co. v. Smith:

"A grantee should not, of course, be held responsible for the creation of an injurious structure by his grantor, and, if not notified of objection, he may be ignorant of its harmful nature, or may legitimately presume that it is voluntarily submitted to; and therefore a plaintiff ought not to be permitted to recover damages for injury alleged to have been done to him by the maintenance of a pre-existing condition during a period when, with full knowledge of his hurt, he had made no complaint of it, nor requested the removal of its cause."

For refusing to direct a verdict in favor of the defendant, the cause is reversed, with directions to grant a new trial.